Exhibit R



1805 Berks Road – Worcester, PA 19490

April 17, 2012

Parsons Brinckerhoff　　　　　　　　　　　　　　　　AI Letter: COM0050
100 South Charles Street　　　　　　　　　　　　　　AI Job 1020034
Baltimore, MD 21201
Attention: Robby McDonald

RE: Governor Printz Interceptors – Section 1
　　Contract No. 2010-01, Project 220612
　　4/11/12 Cessation or Work, Flush Mount Markers.

Dear Robby,

This letter is in response to your April 13, 2012 letter and comments concerning the Cessation of Work due to subsidence of the Flush Mount Settlement Markers. AAM is very concerned that PB has chosen to disregard and not address the fact that the Rev 2 Remediation plan directed by the County and based on the ill advice provided by PB has not worked, and resulted in another project shutdown. Further, we are equally concerned that PB has failed to address the subsidence of the flush mounted markers during the winter shutdown when no work was being performed. Both these occurrences point to fundamental problems with the instrumentation monitoring that we have disputed since May 2011 and have been forced to comply with as our only means to forward the project.

In regard to AAM providing *another* remediation plan, please be advised that AAM's Rev 2 Excavation plan was the remediation plan, and AAM is not aware of any changes that can be made to ensure the flush mount markers stay within the Alert criteria specified for the structure mounted surface settlement markers. As we stated in our November 23, 2011 letter to you, "Neither AAM nor our Design Engineer can provide any assurances that these revised means and methods will stay within the Level 2 threshold specified for the surface settlement markers." At this point, AAM is unsure of what actions PB or the County must take to address the fact that their directives given on this project have been wrong and caused substantial Cost and Time Delay to the Project. In our April 11, 2012 letter we stated, "AAM does not believe the project is constructible within the instrumentation performance criteria Parson's has directed us to follow and which have formally disputed." Our position remains the same on this issue.

Concerning Parson's April 13, 2012 comments indicating there was construction traffic on April 10, 2012 in the area of the flush mount settlement markers. Construction Traffic will always be in the vicinity of the flush mount markers since they are located in the traffic lane adjacent to the work. AAM has made a concentrated effort to protect the flush mounted markers with steel plates and barricades. On the morning of April 11th prior to the pre-excavation survey our General Supt was stationed in this area with the express purpose of providing oversight and supervision of the survey for the flush mount markers. During the winter shutdown the construction lane was barricaded thereby providing protection and preventing unauthorized entry into the area. The location of the flush mount markers is the same

location where PB indicated they should be during the May 2011 geotechnical meeting. On October 24, 2011 we advised Parson the flush markers are ineffective for their intended purpose due to their proximity to the work zone. The installation of the flush mount markers at their present locations were inspected and monitored by Parson's and any vague reference that they are not in accordance with the submittal detail is without merit. We are unsure why Parson's pointed out the obvious fact that construction traffic is in this vicinity and AAM believe these comments only further cloud this issue and have no bearing on why the flush markers have subsided following sheet pile installation and during the winter shutdown.

There are several non-critical work activities that could be started during this project shutdown period due to movement of the flush mounted markers. AAM is proposing to proceed with these activities to mitigate further project time delays which could result if these activities were put off to later date. We are referring to activities such as: Testing of the completed pipe, Installation of manhole inverts, and Roadwork where we have completed the pipe installation.

You should be aware, however, that there is a potential for further unanticipated cost impacts to AAM due to starting this work now. We would most likely incur lower productions due to performing smaller sections of work rather then the as –bid productions where larger areas where anticipated; plus we would have additional mobilizations for both AAM and Sub-Contractors. Nevertheless, we believe it is in the best interest of the Project to move forward with these activities. Therefore, please advise AAM if you agree with AAM performing these non-critical, out of sequence activities now, but also recognizing the potential for AAM to incur unanticipated cost impacts should we move forward with this work. Accordingly, please be advised that to the extent that PB permits AAM to proceed with this above described out of sequence work, AAM hereby provides Notice that we reserve our rights to file for additional compensation for performing this work now.

Please advise us of your thoughts and whether you agree with proceeding with non-critical work activities during this shutdown period. In addition, be advised that all costs and delays associated with this second unwarranted shutdown are to the County's expense.

Sincerely,

*Carmen D Cipriano*

Carmen D. Cipriano
Senior Project Manager